MARY DUNDAS v. THE CITY OF LANSING.

*Municipal corporations—Injury from defective sidewalk—Statements of party as to cause of injury—Notice to city— Contributory negligence—Evidence.*

1. Statements by a party as to the *manner* of his injury, not necessary to diagnose his case, cannot be given in evidence by an attending physician, any more than by a non-professional man.[1] *Merkle v. Township of Bennington,* 58 Mich. 160.

2. The *individual* knowledge of officers or agents of a municipal corporation, who in such capacity have powers or duties conferred upon them with reference to a given matter, is the knowledge of the corporation, and notice to them is notice to the corporation, which is bound by such knowledge or notice.

3. Where the liability of a municipal corporation is statutory, it must depend upon a true interpretation of the statute creating it.

4. A municipal corporation is only chargeable with notice or knowledge of the *particular* defect in a street or sidewalk causing the injury complained of.

5. A city cannot be held liable for damages caused by the non-repair of a cross-walk on a particular street by showing that sidewalks in the vicinity were out of repair. *G. R. & I. R. R. Co. v. Huntley,* 38 Mich. 540.

6. Where, in a negligence case, the defect causing the injury complained of is in the walk itself, prepared and provided for the use of pedestrians, and the accident happened in the night-time, and while pursuing the ordinary traveled way, the question of the plaintiff's care should be submitted to the jury as a question of fact.

7. It is not competent for counsel for plaintiff to show that plaintiff's memory has become impaired since meeting with the injury sued for, for the purpose of counteracting the damaging effect of his testimony, and forming a basis for an argument to the jury that he is mistaken in the same.

Error to Ingham. (Peck, J.) Argued April 23, 1889. Decided June 28, 1889.

---

[1] See *Lendberg v. Brotherton Iron Mining Co., ante,* 84 (head-note 1).

75   499
78   210

75   499
80   183
80   660

75   499
82    7
82   484

75   499
88   605

75   499,
92   205

75   499
93   507,

75   499
95   272

75   499
103   314

75   499
113   685

75   499
120   298

75   499
f121   586

75   499
123   164
123   192

75   499
124   350
124   605
124   660
d124   661

75   499
f125   502
d125   515

75   499
s42NW1011
s13ASR 457
129   6484

75   499
s42NW1011
131   6448

75   499
s42NW1011
s13ASR 457
d132 6496

75   499
136   2175
136   6507

75   499
137   6 56

75   499
141   6 21
142   6335

75   499
j146 6180

75   499
158  6 82

Case for injuries received by reason of a defective cross-walk. Defendant brings error. Reversed. The facts are stated in the opinion.

*R. A. Montgomery,* city attorney, for appellant.

*Cahill & Ostrander,* for plaintiff.

CHAMPLIN, J.   This action was brought to recover damages for a personal injury alleged to have been caused by the neglect of defendant in not keeping a cross-walk in repair. An objection is raised by the defendant which goes to the plaintiff's *right* of action, although not affecting her *cause* of action, which, if disposed of in favor of the defendant, will suspend further proceedings in this suit, and render it unnecessary to pass upon other questions raised by the record.

The charter of the city of Lansing contains the following provision :

" The council shall audit and allow all accounts chargeable against the city, but no account or claim or contract shall be received for audit or allowance unless it shall be accompanied with an affidavit of the person rendering it, which affidavit may be taken and certified by any member of the common council, to the effect that he verily believes that the services or property therein charged have been actually performed or delivered for the city ; that the sums charged therefor are reasonable and just; and that to the best of his knowledge and belief no set-off exists, nor payment has been made on account thereof, except such as are indorsed or referred to in such account or claim.   And every such account shall exhibit in detail all the items making up the amount claimed, and the true date of each.

"It shall be a sufficient defense in any court, to any action or proceeding for the collection of any demand or claim against the city, that it has never been presented, verified as aforesaid, to the council for allowance, or that the claim was presented without the affidavit aforesaid, and rejected for that reason, or that the action or proceeding was brought before the council had a reasonable time to investigate and pass upon it."   Section 17, tit. 4, Act No. 282, Local Acts of 1875.

The amendments of 1883 do not affect the point under consideration.   See Local Acts of 1883, p. 734.

The record shows that on the sixteenth day of January, 1888, the plaintiff presented her claim to the common council in detail, in which she explained when, where, and how the accident happened, her consequent injury, her expenses incurred for medical attendance, medicine, and loss of time resulting from such injury. She stated that she had suffered greatly in body and mind by reason of her injuries; that she was unable to state any amount which would be adequate for the pain and suffering she had endured, and must continue to endure, nor her loss in case disability should prove to be permanent; but if her claim should be recognized by the city in the spirit of fairness, and an adjustment thereof speedily made, she would accept the sum of $2,000, in addition to the other items, which amounted to $81. She asked that her claim be investigated by the council, and a reasonable and just allowance made her as compensation. Her claim was verified by her affidavit, in which she stated that no set-off exists to her claim, nor has any payment been made on account thereof.

The claim was referred to the city attorney, who reported it back, with the recommendation that the same be laid upon the table, which report and recommendation was adopted by the unanimous vote of the council.

No investigation was made by the council into the facts and circumstances or merits of the claim, and on April 23, 1888, this suit was commenced to recover her damages for the same claim so presented to the council.

We think the plaintiff complied substantially with the requirements of the charter. Ample time and opportunity were afforded the council to investigate the merits of the claim presented, had they chosen to do so. The plaintiff is not barred from a recovery by the charter provisions mentioned.[1]

---

[1] See *Lay v. City of Adrian, ante,* 4 8 (head-note 3), holding that such a charter provision does not apply to a claim for personal injuries sustained by reason of the negligence of the city.

The plaintiff claims that on Thanksgiving day, 1887, as she was traveling from her place of employment to her home, at about seven o'clock in the evening, accompanied by two of her children, she stepped in a hole in the cross-walk as she was crossing Butler street, and partly fell, and received a severe strain in her back, which occasioned an injury to her spine, and from the effects of such injury she has suffered great bodily pain, and become disabled from doing work; that she was in the exercise of ordinary care; and that the city was negligent in not keeping the cross-walk in repair after it had notice or knowledge of its unsafe condition. The hole was caused by a broken plank in the cross-walk directly over the gutter. The plank was from six to eight inches wide, and had broken about eighteen inches from the west stringer, and that length had been torn out and removed; thus making the hole about eight by eighteen inches, and about eighteen inches deep to the bottom of the gutter.

On the fourth day after the accident plaintiff sent a request to her employer, a Mr. Wilson, to send her some liniment. Instead of doing so, he sent her a physician, Dr. Ostrander, who testified to making an examination of the injuries of plaintiff three or four days after Thanksgiving day. He testified fully as to her condition and to her complaints as to her ailments, and, against the objections of the counsel for defendant, he was permitted further to testify as follows:

"She told me that she stepped in the hole at the cross-walk, and that she fell quite a distance. I think she said she stepped in with the right foot,—but I am not certain about that,—and that she received a severe shock, severe wrench to her back, in falling that distance, and tried to save herself, and that she came on home, and suffered a great deal that night,—a great deal of pain."

The court erred in permitting the declarations of the plaintiff, as to the manner and circumstances of her injury, to be given in evidence. There is no pretense that they were a part of the *res gestæ*. They were not necessary to enable the

physician to correctly diagnose her case. He had testified fully to that already. The only purpose which such testimony could answer would be to establish the fact, which was disputed, that she had received the injury complained of on account of a defect in the cross-walk. This is made more manifest by the question by which such testimony was followed, namely:

"What did you think at that time as to whether the symptoms that you found there could be accounted for by such an injury as she described? Can you tell the jury directly whether or not such an injury as she complained of could have been caused in the manner that she described to you at that time?"

Objection was timely made to this question, and was overruled. The witness answered:

"Well, it could have been caused by the accident that occurred."

That narrations of past occurrences as to the manner in which a party has been injured cannot be given in evidence by an attending physician, any more than by a non-professional man, is settled in this Court by the case of *Merkle v. Township of Bennington,* 58 Mich. 160 (24 N. W. Rep. 776). The testimony should have been excluded.

The questions put to Dr. Shank, calling for a narration from the plaintiff of the way the injury occurred, should have been excluded for the same reason.

The statute creating the liability of municipal corporations, and giving a right of action for negligence to a party injured, contains this proviso:

"That in all actions brought under this act it must be shown that such township, village, or city has had reasonable time and opportunity, after knowledge by or notice to such township, village, or city that such highways, streets, bridges, sidewalks, cross-walk, or culvert have become unsafe or unfit for travel, to put the same in the proper condition for use, and has not used reasonable diligence therein after such knowledge or notice." Laws of 1887, Act No. 264, § 2.

The plaintiff, in order to prove notice to the city, introduced testimony to show that actual notice was given to the alderman of the ward in which the cross-walk in question was located of the defective condition of sidewalks in the vicinity of the defective cross-walk which occasioned the injury as claimed. This notice was given in the latter part of April or the forepart of May, 1887, and the accident occurred in November. There was testimony introduced tending to show that the particular defect complained of had existed six months prior to the accident to plaintiff.

The individual knowledge of officers or agents of a municipal corporation, who in such capacity have powers or duties conferred upon them with reference to a given matter, is the knowledge of the corporation, and notice to such officers or agents is notice to the corporation, and the corporation is bound or affected by such knowledge or notice.

Where the liability of the municipality is created by statute, such liability must depend upon a true interpretation of the statute under which it is created. The charter of the city of Lansing provides that—

"The common council shall be commissioners of highways for said city, and shall have the care and supervision of the highways, sidewalks, streets, bridges,     *     *     * therein, not belonging to or occupied by the State; and it shall be their duty to give directions for the repairing, preserving, improving, cleansing, and securing of such highways,     *     *     * and to cause the same to be repaired, cleansed, improved, and secured from time to time, as may be necessary;     *     *     * to divide said city from time to time into so many highway districts as they shall deem expedient, by an ordinance or resolution entered in their minutes; to appoint and assign to each of such districts so many inspectors of streets as they shall from time to time deem proper." Local Acts of 1875, tit. 12, § 14, Act No. 282.

"It shall be the duty of the street inspectors of the several ward districts to perform, or cause to be performed, all such labor, repairs. and improvements upon the highways, streets, sidewalks,     *     *     * within the city, as the council or

city marshal shall direct to be done by or under their supervision." Title 5, § 25.

Section 21 of the same title provides that—

"It shall be the duty of the marshal to superintend, under the general direction of the common council, all work to be done or performed, ordered, or required to be done or performed upon or in relation to any of the public streets, walks, * * * of said city."

The city is divided into six wards, and two aldermen are elected in each ward. The mayor and aldermen of said city constitute the common council. The city attorney, city marshal, city auditor, street commissioners, city surveyor, and engineer of the fire department have seats in the council, with the right to take part in all its proceedings and deliberations on all subjects relating to their respective departments, but without the right to vote, and may be compelled to attend the meetings of the council the same as members. Act No. 338, Local Acts of 1883, tit. 4, § 10.

Under these provisions of the charter, the primary control over the streets, and the authority to direct repairs, are vested in the common council. The city marshal is superintendent of all work done, or ordered by the common council, in relation to the public streets, and the street inspectors are to do or cause to be done all repairs upon the streets which the council or city marshal shall direct to be done by or under their supervision. The clause of the charter authorizing street "commissioners" to have a seat in the common council evidently refers to street "inspectors," as the council are given authority to appoint "street inspectors," but I find no such officer as "street commissioner" who is either elected or appointed by the terms of the charter.

As the corporation can acquire no knowledge of defective streets and sidewalks except such knowledge as is possessed by the aldermen of the city, or the city marshal or the street inspectors, who are the only agents having any duty to per-

form with reference to keeping streets in repair, it would seem to follow that knowledge of any such agents of a defect in streets or sidewalks would be the knowledge of the corporation, and that actual notice given to either of these agents of such defects would be notice to the corporation.

Now, while an individual alderman, not acting in a meeting of the council, has no control or supervision over the streets any more than a private citizen, yet when he meets in council he does have a voice in saying what repairs shall be made, and, if a meeting of the council has been held after knowledge by or notice to him, there is no good reason why such knowledge or notice should not be imputed to the body of which he is a member, based upon the duty which he owes to the public to impart his knowledge affecting the public interest to the council.

For the same reason should the knowledge of the city marshal and street inspectors be held to be the knowledge of the council. They are entitled to seats in the body, and to be heard upon the matters under their supervision, and the keeping of streets in repair comes under their supervision.

Had each alderman of the city seen this hole in the walk, and been cognizant that it had been there for six months, it would be absurd to hold that the collective body called the common council had no knowledge of what each individual composing it knew full well. The duty of all to bring the matter of repair before the council for its action is no greater than the duty of each member to do so who is possessed of such knowledge. The aldermen represent the city in respect to those matters placed under the control of the council, and are so far its agents that notice to them with regard to such matters is notice to the principal. *Fulton Bank v. N. Y. & Sharon Canal Co.*, 4 Paige, 127; *North River Bank v. Aymar*, 3 Hill, 262; *U. S. Bank v. Davis*, 2 Id. 451; *Security Bank v. Cushman*, 121 Mass. 490; *Trapnell v. City of Red Oak*

*Junction,* 39 N. W. Rep. 884; *Carter v. Town of Monticello,* 68 Iowa, 178 (26 N. W. Rep. 129).

It must be borne in mind, however, that the knowledge or notice which the statute requires is that of the *particular* defect complained of, and not knowledge or notice of other defects, which, although they are shown to exist to the knowledge of the city, did not occasion the injury alleged.

The longest time the testimony of any of the witnesses in this case showed the defect in the cross-walk to have existed was six months, and the notice to the alderman was prior to that time; and the notice to the city marshal was something like two years prior to the accident. The notice given was as to the defective condition of the sidewalks generally, and not of any particular defect. Such testimony ought not to have been received. It had no tendency to show actual notice of the defect complained of, and it was too remote and indefinite for the purpose of proving that the particular defect had existed such a length of time that notice might be presumed or inferred. The city cannot be held liable for damages caused by the non-repair of the cross-walk at Butler street by showing that sidewalks in the vicinity were out of repair. In *G. R. & I. R. R. Co. v. Huntley,* 38 Mich. 540, CAMPBELL, C. J., said:

" We are also of opinion that no defects in the track could be relied on to show negligence contributing to the accident except those existing where the track was injured or displaced, and that testimony as to the condition of the road away from the scene of the injury was improper to make out a cause of action, and could only tend to raise false issues. The testimony should be confined to the time as well as place of the accident."

To the same effect are *Collins v. Inhabitants of Dorchester,* 6 Cush. 396; *Robinson v. Fitchburg & Worcester R. R. Co.,* 7 Gray, 92; *Maguire v. Middlesex R. R. Co.,* 115 Mass. 239; *Bailey v. Township of Trumbull,* 31 Conn. 581; *Jacques v. Bridgeport Horse R. R. Co.,* 41 Id. 61.

In this case the plaintiff was permitted to produce testimony tending to show generally the bad and defective condition of the sidewalks a block or more each way from the cross-walk on Butler street. This was error. It is going far enough to hold that it may be shown that accidents have happened to other people who were exercising ordinary care, on account of the particular defect complained of; but such testimony is admissible mainly as tending to show the dangerous character of the defect,—in other words, that on account thereof the street or sidewalk or cross-walk was not reasonably safe and fit for travel. Very remotely, and in connection with other testimony showing the length of time the defect had existed, it might have a bearing upon the question of notice to the municipality. *Smith v. Township of Sherwood*, 62 Mich. 159 (28 N. W. Rep. 806); *Tomlinson v. Derby*, 43 Conn. 562.

There was abundance of testimony tending to show that the defect in the cross-walk at Butler street was in plain sight, and obvious to any person passing along the street, and that it had existed such a length of time as justified the jury in finding that the city had notice of the defective and dangerous condition of the cross-walk.

The question in the case that most perplexes us is the contributory negligence of the plaintiff. She testified as a witness in her own behalf, and, so far as any impression can be derived from the record, she gave her testimony intelligently and truthfully. There is no indication from her answers of any impairment of intellect or of memory. She says that she was on her way home from her daily labor, walking in company with two of her children,—one a daughter of the age of eighteen, and the other a son of the age of seven; that the time was from seven to eight in the evening; that the weather was stormy, either a slight mist or snow falling; that she had traveled over the same walk for several weeks, twice a day, for three, four, and five days in a week, and had known

of the broken plank and hole in the cross-walk at the Butler-street crossing from June to the time of the accident; that one of her children was upon one side of her, and the other upon the other side of her, and, as she was crossing Butler street, she stepped into the hole in the cross-walk, and partially fell, and was caught by her eldest daughter, so that she did not fall down; that she passed right on home, but the result of stepping into the hole was to severely wrench her back, causing, as the testimony tends to show, injuries of lasting and serious character.

She testified that she was in a hurry to get home, and was not thinking about the hole in the walk, nor looking for it, and that if she had been thinking about it, or looking for it, she would not have stepped into it; that she was sure it was because she did not think of it that she stepped in; that she did not look for the hole. She also testified that she could not recollect what she was thinking about or looking at when she stepped in.

Counsel for defendant claims that it conclusively appears from her own testimony that she was not in the exercise of ordinary care, and that a verdict should have been directed for the defendant on the ground that her own negligence contributed to the injury.

The question of contributory negligence when a person is injured through a defect in the street or walk of which he had previous knowledge is one of some difficulty. Such knowledge does not always bar a party from a right of recovery, as we held in *Lowell v. Township of Watertown*, 58 Mich. 568 (25 N. W. Rep. 517).

There are many cases reported where under the circumstances attending the transaction courts have rightly held that the party was not entitled to a recovery where the danger was apparent and known, and the injury resulted from their own carelessness and inattention.

Where the defect is in the walk itself, prepared and provided

for the use of pedestrians, and the accident happened in the night-time, and while pursuing the ordinary traveled way, the question of the plaintiff's care should be submitted to the jury as a question of fact.

It is doubtless true, as plaintiff testified, that had she been at the time upon the lookout for this hole in the walk she might have seen and avoided it; but the question is, was she negligent, under all the circumstances and surroundings, in not seeing and avoiding it? The darkness of the night, the storm, her anxiety to get home, are all circumstances that should be weighed as bearing upon her conduct upon that occasion. The question is not free from doubt, and when it is not it should be submitted to the jury.

The plaintiff's counsel endeavored to explain away the frank avowal of the plaintiff in her testimony,—

1. By showing that she had cautioned her children to be careful, and spoke about the walk being bad.

2. By introducing testimony to show that plaintiff's memory had become weakened, and thus to form the basis for argument to the jury that she was mistaken in her testimony, and that she did have the danger in her mind, and was in the exercise of care with reference to this particular defect, but had forgotten it.

He was permitted to show by her son-in-law and other witnesses that after she had testified she could not tell or remember what she had testified to upon the trial. This testimony was improperly admitted. The following is a sample:

"*Q*: State to the jury how her health has been since she was here on Fr day.

"*A*. In an hour's time after she got home—after I went home Friday night—she could not tell what she swore to on the stand.

"*Q*. How did her physical health appear to be as to whether she was able to sit up? Describe to the jury how she appeared physically.

"*A*. She went to bed as soon as she got home, and didn't get up again until the next morning. We took her supper

to her. She did not eat but a very little, and she has not been out of her bed but once since.

"*Q.* What did you say to her in relation to what took place here in court?

"*A.* I asked her if she remembered what she said when they asked her whether it was snowing or not. Said she didn't know, could not remember,—did not know as they asked her that question at all. That was about all that we talked about."

This testimony could not have other than a pernicious effect upon the jury, and was inadmissible for any purpose. Consequently the charge of the court, based upon this testimony, was likewise erroneous.

The judgment must be reversed, and a new trial granted.

CAMPBELL and LONG, JJ., concurred.

MORSE, J. While I agree with Mr. Justice CHAMPLIN that there was evidence wrongfully admitted as to the general condition of the sidewalks away from and too remote from the place of the accident, I cannot agree with all that he has said upon that subject.

It was not necessary that the attention of the officers of the city should have been called directly to this hole in the cross-walk on Butler street, into which the plaintiff stepped. Any notice which would naturally call their attention to it would be suffic'ent; and I think when such officers were notified that the walks were defective for a block each way from the Butler-street crossing, such notice, if acted upon by them, would have also brought to their notice this particular defect in the crossing. Therefore the evidence of such notice had a tendency to prove notice of such particular defect.

It can never be necessary that specific notice of the particular hole or defective spot shall be brought home to the city, if its officers had notice that the walks in its immediate locality were generally defective and out of repair.

I concur in the remainder of the opinion.

SHERWOOD, C. J., did not sit.