## HURON PRINTING & BINDERY CO. v. KITTLESON *et al.*

1.  Where, upon an issue of fact, there is substantial evidence to support the verdict of the jury, it will not be disturbed by this court.

2.  The knowledge of S., who was the principal promoter and organizer of a corporation, and who acquires his knowledge as such, and who, upon its organization, becomes its manager, is the knowledge of the corporation.

3.  The adoption by a corporation of an agreement made by its promoter may be implied from the acts of the corporation without any express acceptance.

(Syllabus by the Court. Opinion filed Jan. 6, 1894.)

Appeal from circuit court, Beadle county. Hon. A. W. CAMPBELL, Judge.

Action to recover the possession of personal property alleged to have been wrongfully taken from plaintiffs by defendants. Defendants had judgment, from which and an order denying a new trial, plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*T. H. Null* and *W. A. Lynch*, for appellant.
*Cooper & Comfort*, for respondents.

BENNETT, P. J.    This action is one brought by the plaintiff, the Huron Printing & Bindery Company, to recover the possession of certain printing materials and machinery, enumerated and described in the complaint.    The plaintiff alleges that on August 9, 1889, it was the owner and in possession of that property, and that it was wrongfully taken from it by the defendants.    The defendants contend that the property was not, and never had been, the property of the plaintiff, but that it was owned by one Charles Kittleson, and that it was taken by the defendants for said Charles Kittleson, as his agent; and deny that it was in the possession of the plaintiff when so taken, but allege that it was in the possession of the sheriff of Beadle county.    The issue between the parties is one of fact, which the jury, on all the evidence submitted to them, found in favor of the respondents.    A motion for a new trial was made upon the following grounds:    That the evidence was insufficient to justify the verdict; that the verdict was contrary to law; and that there were errors of law occurring at the trial, which were duly excepted to at the time.    The motion was overruled, and the court entered judgment that the defendants have possession of the property.    From the order overruling the motion for a new trial, and the judgment, the plaintiff appeals.

The only material question in the case is whether the property which is the subject matter of the action was ever transferred and delivered to the Huron Printing & Bindery Company by Charles Kittleson, or by the defendant J. C. Kittleson. If it was so transferred and delivered, then, on August 9, 1889, when the property was taken by the respondents, it was the property of the appellants.    If the title to the property was never transferred by the Kittlesons to the Huron Printing & Bindery Company, then, on the 9th day of August, it was the property of Charles Kittleson, and the defendants had a right to take possession of it.    To establish the contention of the appellant, but one witness (N. T. Smith) was called and examined who testified to being the manager of the Huron Printing &

Bindery Company. That the property of Charles Kittleson had been turned over to the Huron Printing & Bindery Company, and that a bill of sale of said property had been executed and delivered by Joseph C. Kittleson, one of the respondents, either as the owner of this property or as the agent of Charles Kittleson, to the company; and that in payment of said prop erty a certain certificate of stock had been issued to Joseph C. Kittleson, which had been accepted by him in full satisfaction for said property. That this was done on May 10, 1889. That from that time up to August 9, 1889, the appellants were the owners of this property. That they used it in their business; and that during all this time the appellants had been properly organized, and were carrying on their business in the usual way. That the respondent, Joseph C. Kittleson, was the treasurer of said corporation, and acted as such. That the respondent Howard C. Shober was the secretary of said corporation, and acted as such. That on August 9, 1889, the respondents began to remove this property out of the Times building, in which it had been placed in the early part of May, 1889, and took possession of said property, and moved it away. That this property was shipped from St. Paul to Huron. That in January, 1889, N. T. Smith had a conversation with Charles Kittleson, in St. Paul, in which conversation Charles Kittleson requested him to take the respondent Joseph C. Kittleson out to Huron with him; and that the property which was sent to Huron belonged to the respondent Joseph C. Kittleson. That the same had been given to him by his father, Charles Kittleson; and that he (Kittleson) desired Smith to issue the certificate of stock in the name of the respondent Joseph C. Kittleson and not in the name of Charles Kittleson. On behalf of the respondents was the testimony of Joseph C. Kittleson, Howard C Shober, Charles Kittleson, C. Dunning, and John Millan. Joseph C. Kittleson testified that the property belonged to his father. That he took no steps towards the incorporation or organization of the Huron Printing & Bindery Company. That

he did not attend any of their meetings, or take part in the election of officers. That he was never elected any officer of the company. That on taking his property out to Huron, his father, Charles Kittleson, instructed him to investigate and see if the representations of Smith were true, before turning over the property, or taking any steps towards the organization of the proposed corporation. That there was never any election of officers, except that Smith printed some letter heads on which Joseph C. Kittleson's name for a time appeared as secretary, and afterwards as treasurer, Smith's own name as manager, and the respondent Howard B. Shober's name as secre·tary. That this property, from May 1st to August 9th, remained in his possession, as agent for Charles Kittleson. That it was placed in that part of the Times building used by lessees Stockwell and Dunning; and that in removing said property from said building he took it as agent for his father, with purpose and intent of sending it back to St. Paul. That about May 10th he executed a bill of sale of this property, and N. T. Smith at the same time executed a bill of sale of his property, both bills of sale running to the Huron Printing & Bindery Company. That these bills of sale were delivered to him for the purpose of being held in escrow until certain things should be completed, viz, until Smith could deliver the possession of the Times building for the use of the corporation; until he (Smith) could turn in his own property free and clear of incumbrances, attachments and other liens which were then on it; and until his father, Charles Kittleson, should approve of the arrangement. That these bills of sale were never delivered, nor was the property ever turned over, to the Huron Printing & Bindery Company. Joseph C. Kittleson also testified that about July 1st he himself filled out a certificate of stock, which was signed by the respondent, Howard C. Shober as secretary. That he filled out this certificate of stock for the purpose of taking it to St. Paul, to submit to Charles Kittleson. That he did so, and that Charles Kittleson then finally decided not to go

into the corporation, and not to turn in his property, and take this stock in payment for it; whereupon he returned to Huron with the stock and informed Smith that he would not turn in the property or take the stock. The respondent Howard C. Shober corroborates the testimony of Joseph C. Kittleson in almost every particular, and testified positively that this property was the property of Charles Kittleson; that the Kittlesons' property was never turned over to the Huron Printing & Bindery Company; that the corporation was not properly organized, or the property of the different parties turned into the corporation as proposed, for the reason that Smith could not deliver up the possession of the Times building, and for the reason that there were attachments on Smith's own property; that the bill of sale was executed by Kittleson, and held by him in escrow, and was never delivered to the appellant. The witnesses Dunning and Millan also both testified that this property was the property of Charles Kittleson; that it was kept separate while in the Times building, from the property of N. T. Smith, and was not used by him in the printing of his newspaper.

While the testimony in behalf of the plaintiff was in several important respects at variance with that of these witnesses, it is plain that there was substantial evidence upon which the jury might have found as they did upon the disputed facts; and in such case the rule is well established that such verdict will not be disturbed by the appellate court.

The appellant further contends that the court erred in admitting as evidence the conversations and agreements between Charles Kitttleson and his son, Joseph Kittleson, of which the plaintiff had no notice or knowledge. The modern doctrine in relation to the admission in evidence of all matters and declarations, either between the parties or others, is to let them go to the jury when they appear to have been made under the immediate influence of the principal transaction, and are so connected with it as to characterize or explain it. See Code Civil Proc. Cal. § 1850. As was said by the court in Bogart v. Phelps, 14 Wis.

95: "The declarations of a vendor, to be admissible, must be a part of the *res gestae*. Where possession is delivered, and transfer complete, they must be at or near the time of the sale. It may not perhaps be material whether they are made shortly before or shortly after the sale, if made so near the time of it as fairly to indicate what was passing in the mind. They are facts connected with the main transaction, which tend to show the motive of the vendor, and are of more or less weight, according to the circumstances of each particular case." The true inquiry is whether the declaration, is a verbal act illustrating, explaining, or interpreting other parts of the transaction of which it is itself a part, or is merely a history, or a part of a history, of a completed part. In the one case it is competent, in the other it is not. Railway Co. v. Becker, 128 Ill. 545, 21 N. E. 524; Mayes v. State, 64 Miss. 329, 1 South. 733; Waldele v. Railroad Co., 95 N. Y. 274; Lander v. People, 104 Ill. 248; Dundas v City of Lansing, 75 Mich. 499, 42 N. W. 1011. Applying this principle to the case at bar, we find that one N. T. Smith, who lives in Huron, S. D., the only witness for the plaintiff, some time before the organization of the plaintiff corporation came to Charles Kittleson, who resided in St. Paul, Minn., and represented himself to be the proprietor and publisher of a daily newspaper known as the Huron Times, and they had several conversations together relating to the future prospect of establishing a printing and bindery concern in Huron; Smith expressing an opinion that such an enterprise would pay, and be a profitable investment; that he had made inquires as to the amount of work he could procure from counties, and that he procured consent of a large number of county officers of South Dakota to take stock in a company to be called the Huron Printing and Bindery Company; and if said Charles Kittleson, who was then the owner of the property described in the complaint, would let the property go into the company, and take stock for its value, and let his son, the defendant, J. C. Kittleson, go to Huron with it as manager for the time being

the enterprise would pay a large dividend. Smith further represented that he had procured a man from Chicago to act as president, who was a wealthy man, and would take a large amount of stock. Smith also stated that his paper and its material, which he proposed to turn into the company as part of its capital, was well paying, and would pay better by having more capital and enlarging the plant so as to do a general binding and printing business for the whole state. The testimony further shows that Charles Kittleson finally consented to send the property to Huron in charge of his son, J. C. Kittleson, as his agent, with instructions to him that if he found these reports made by Smith to be true, as then stated to him, he would further consider the matter of taking part in the organization of this printing and bindery company. It is to the admission of the instruction given by the elder Kittleson to his son that objection is urged. We think the testimony as above detailed clearly comes within the rule that these declarations were but illustrating, explaining, and interpreting a part of a transaction of which it might become a part, and was competent. It frequently happens that persons owning property which is adapted to business uses bring about the formation of a company for the purpose of selling the property to the company, and providing the means to pay the purchase price, by inducing others to subscribe for shares. This is legitimate, and there is no rule of law prohibiting such a transaction. Such person or persons are termed "promoters." They usually represent themselves to be deeply interested in its success, and are instrumental in inducing the subscriptions of stock by means of representations and promises in relation to the projected enterprise. As a rule, the promoters possess absolute control over the policy and operations of the company when it is first formed, and in many instances the first board of directors of the company consist of nominees of the promoters, and is wholly within his or their control. The subscriptions of the shareholders are made upon trust that the promoters are men

of rectitude and business sagacity, who will use their knowledge and exercise their control over the enterprise for the ben efit of the company. Justice demands that the promoters of a company should not abuse the confidence placed in them by the stockholders, or derive any unjust advantage through their control over the organization or management of the company. Mor. Corp. § 545. Under this definition and scope of the office of a promoter as laid down by Morawetz, Smith was a promoter in the proposed enterprise of the Huron Bindery & Printing Company. He was a party to the representation made to Charles Kittleson as inducement to ship his property to Huron, and send his son, as his agent, in charge of the property, with instructions not to join in the enterprise if the representations made by Smith were not true. Under these circumstances, was the knowledge of Smith, the promoter, the knowledge of the company after it was organized? A promoter is not an agent, for agency implies the exercise of a principal, and a delegation of authority from the principal to the agent. Therefore a corporation is not responsible for acts performed or contracts entered into by a promoter before it came into existence. But a corporation may, however, make itself responsible for such acts and representations by adoption. The adoption of an agreement made by a promoter of a corporation may be im- plied from the acts or acquiesence of the corporation without any express acceptance. After a corporation has knowingly received the benefits of an arrangement or understanding entered into by its promoters, it will not be permitted to deny that it did not agree to it. The record is silent as to when the Huron Printing & Bindery Company was organized, and who were the officers and directors; and, were it not that the answer admits its organization, we should be left in the dark as to whether it was ever properly organized; but by this admission we must presume it was, and that Smith was, as stated in the record, and claimed by him to be, vice president and manager of the corporation; and the undisputed evidence shows

that he (Smith) was informed that the property sent by the elder Kittleson was his property, and put in the hands of his son, J. C. Kittleson, as his agent. It is clear that Smith's knowledge of these facts was the knowledge of the company, and that no error was committed by the court in allowing the conversation between the Kittlesons to go to the jury.

The appellant further contends that the court erred in admitting evidence tending to show that J. C. Kittleson was not the owner of the property at the time he executed the bill of sale of it to the company, and it contends that the company had no notice that the property was not the property of the defendant J. C. Kittleson. The defendants, having dealt with the plaintiff upon the theory that he was the owner of the property, are estopped from making any other defense inconsistent with such conduct. This contention is not tenable, for, as we have attempted to show in discussing the second contention of appellants, that Smith's, the vice president and manager's knowledge was the knowledge of the company, and that he was a party and was knowing to the condition under which the property was shipped to Huron, and the company took it, if at all, with this knowledge. Such being the case, it was no error to show who was the owner of the property at the time it was taken by the defendant. Finding no error, the judgment is affirmed.