CITY OF FLINT v. CHICAGO BONDING & SURETY CO.

1. MUNICIPAL CORPORATIONS—PRINCIPAL AND AGENT—AUTHORITY TO BIND PRINCIPAL—NOTICE—RATIFICATION.

An assistant in the office of the city engineer of the city of Flint, who signed letters as assistant city engineer, although under the charter there is no such officer, had no authority to bind the city by a statement in one of his letters to the surety company on the contractor's bond that payments on the various contracts of said contractor were being withheld until all of the damage suits then pending in court had been settled; there being no evidence that the city or the council had any notice or knowledge of such statement.

2. SAME—PRINCIPAL AND SURETY—ASSIGNMENTS—NOTICE.

Where the city was not notified of claims for damages arising out of the negligence of a paving contractor until after the paving was completed and paid for, no obligation rested upon the city to withhold moneys due the contractor on other contracts for the protection of the surety on the contractor's bond against pending damage suits, in the absence of notice to the city that such funds had been assigned to the surety company.

Error to Genesee; Stevens, J. Submitted June 12, 1918. (Docket No. 56.) Decided July 18, 1918.

Assumpsit by the city of Flint against Richard Hey-stek and Cornelius Vander Vliet, copartners as Hey-stek & Vander Vliet, as principals, and the Chicago Bonding & Surety Company, as surety, on a statutory bond. Judgment for plaintiff on a directed verdict. Defendant surety company brings error. Affirmed.

*Jackson & Fitzgerald,* for appellant.

*John H. Farley* (*Guy W. Selby,* of counsel), for appellee.

STONE, J. Action on the bond of the defendants. It appears that on May 19, 1914, a contract was made by the plaintiff with the defendants Richard Heystek and Cornelius Vander Vliet, copartners, under the firm name of Heystek & Vander Vliet, for the paving by the latter of South Saginaw street between Fifteenth street and Peer avenue in the city of Flint.

On March 26, 1914, the defendants executed a bond to the city in the penal sum of $9,565.49, containing the following condition:

"The condition of this obligation is such that whereas said Richard Heystek and Cornelius Vander Vliet are about to enter into contract with the city of Flint for the construction of a pavement on S. Saginaw street, commencing at the Fifteenth street intersection of said S. Saginaw street, and extending from thence to the Peer avenue intersection thereof in the city of Flint, Michigan. Now, therefore, if the said Heystek and Vander Vliet do well and faithfully perform the said contract in all its terms and conditions and shall perform the work as contracted for according to the plans and specifications and detailed drawings in the said contract referred to and made a part thereof, and shall save and keep harmless the said city of Flint from any and all actions brought against the said city of Flint by reason of the construction of said pavement, in any way arising during the performance of said contract, in accordance with the terms and conditions of said contract, then this bond to be null and void; otherwise to remain in full force and effect."

In the instant suit it was alleged and claimed by the plaintiff, that the defendants did not save and keep harmless the said city from any and all actions brought against the city by reason of the construction of said pavement, in any way arising during the performance of said contract, in that one Sidney Hall, because of the negligence of said Heystek & Vander Vliet in the construction of said pavement, because of their failure to observe the conditions of said contract, and the ordinances of said city, commenced a suit against the said city of Flint in the circuit court for the county of Genesee for personal injuries arising out of the construction of said pavement, and on, to wit, February 10, 1916, recovered a judgment against the city for $1,500 damages and costs of suit to be taxed, which costs were thereafter taxed at $66.85, and which said judgment was thereafter and on April 9, 1917, duly affirmed by the Supreme Court (195 Mich. 638), and the costs in said last-named court were taxed in favor of said Hall and against the city at $38.80, and which said judgment and costs and interest thereon were thereafter paid by said city.

The defendant Chicago Bonding & Surety Company gave notice under the general issue, among other things, that it would show in defense: That the city of Flint agreed, undertook, and promised to retain and withhold moneys due to the contractors, until all claims against the city or contractors, arising out of any work done by the contractors on the streets of the city had been paid; and that, notwithstanding such promises, the city failed to withhold sums due the contractors, thereby depriving the surety company of the right to have the same applied in payment of the judgment obtained by Hall.

Upon the trial the plaintiff introduced in evidence the bond and contract, notice to the defendants of the claim of Hall, and of the summons, and the proceed-

ings in the case of Hall against the city, the facts and circumstances of Hall's injury, and the payment of that judgment after affirmance in this court. It appeared that at the time the city had notice of the claim of injuries made by Hall, which was on or about December 24, 1914, all sums due defendants Heystek and Vander Vliet under the contract had been fully paid. It appears inferentially that one Darling had also made a claim against the city for personal injuries which arose at the same time that the Hall claim arose; and that defendants Heystek and Vander Vliet had other contracts with the city, and that they had given other similar bonds, with the defendant Chicago Bonding & Surety Company as surety. There was nothing in the contract for paving the street where Hall was injured giving the right to the city to withhold money due, for any purpose.

In its defense the defendant Chicago Bonding & Surety Company offered in evidence certain correspondence between said surety company and W. R. Drury, who signed his letters as assistant city engineer. These letters were objected to upon the ground that Drury had no authority to write them, or to bind the city, and that even the city engineer could not bind it, and the objection was sustained. Those letters, although never received in evidence, are spoken of in the record and briefs as defendants' exhibits 1, 2, 3 and 4. The letter of July 7, 1915, was in answer to one written by the surety company to the city engineer. Those letters were as follows:

"CITY OF FLINT, MICHIGAN, July 7, 1915.
"CHICAGO BONDING & SURETY CO.,
    "1520 Dime Bank Bldg.,
       "Detroit, Mich.
    "*Gentlemen:* Replying to your letter of the 6th inst. regarding the contracts of Heystek & Vander Vliet, I have to advise that the following contracts have been completed and the work accepted:

"St. John Street, pavement, Avon to Houran.

"S. Saginaw St. pavement, Fifteenth to Peer.

"First Avenue pavement, Detroit to Garland.

"Harriet St. pavement, P. M. R. R. to Industrial.

"Regarding the contract for the Richfield road pavement, East to Geneseret street, will say that the work is finished and there remains $300.00 to be paid on acceptance of the work.

"On the Avon street pavement, from Richfield road to the river there remains $1,983.70 to be paid. On Avon street pavement, from St. John street to the bridge there remains $1,513.20 to be paid.

"Very respectfully,

[Signed]  "W. R. DRURY,

WRD:W                         "Ass't City Engineer."

"CITY OF FLINT, MICHIGAN, September 20, 1915.
"CHICAGO BONDING & SURETY COMPANY,

"Chicago, Illinois.

"*Gentlemen:* Replying to your letter of the 18th inst. I have to advise that Avon street pavements, from Richfield road to the river, and from St. John street to the bridge, have been completed and accepted and final payment was made Heystek & Vander Vliet, contractors, on July 20th, 1915.

"Very respectfully,

[Signed]  "W. R. DRURY,

"Ass't City Engineer."

"CHICAGO BONDING & SURETY COMPANY,
"CHICAGO, ILLINOIS, July 10, 1915.

"MR. W. R. DRURY,

"Assistant City Engineer,

"Flint, Michigan.

"*Dear Sir:* I have before me your favor of July 7th, addressed to our Detroit, Michigan, office in regard to various paving contracts with Heystek & Vander Vliet in your city, and note that the St. John street pavement, Avon to Huron; South Saginaw street, Fifteenth to Peer; First Ave., Detroit to Garland; Harriett street, P. M. R. R. to Industrial, and Richfield road east to Guernsey have been completed.

"We are not quite clear regarding the pavement mentioned in the last paragraph of your letter, *i. e.*, Avon street from Richfield road to river and Avon street from St. John street to the bridge.

"Will you kindly advise if these last two contracts have been completed, and if not what percentage remains to be completed?

"In regard to the various amounts you are retaining we presume you will withhold the payment of these pending the outcome of the suit of Wm. Darling against the city of Flint for $2,000.00 and Sidney Hall against the city of Flint for $2,500.00 now pending in the circuit court of Genesee county for personal injuries received during the construction of one of these pavements.

"Thanking you in advance for a reply, for which we enclose stamped and addressed envelope, I am,

"Very respectfully,

"W. A. WESTERFIELD, Surety Claim Dept.,

"Chicago Bonding & Surety Co."

"CITY OF FLINT, MICHIGAN, July 12, 1915.
"CHICAGO BONDING & SURETY COMPANY,

"Chicago, Ill.

"Attention of Mr. H. N. Farrand,

"Supt. of Contract Dept.

"*Gentlemen:* Replying to your letter of the 10th inst. I have to advise you that Avon street pavement, from Richfield road to the river, and from St. Johns street to the bridge are practically completed. There are a few details to be finished by the contractors before the work will be accepted. The payments on the various contracts of Mr. Heystek are being withheld until all of the damage suits now pending in circuit court have been settled. The Richfield road pavement, from East street to Geneseret street has been finished, but there are a few things to do before the work is accepted.

"Very respectfully,

[Signed] "W. R. DRURY,

"Ass't City Engineer."

When these letters were offered by said defendant there was a lengthy colloquy between court and counsel, of which the following, during the examination of the city auditor, is a fair synopsis:

"*Mr. Fitzgerald:* I want to make, then, a complete offer on the record of what we propose to show. We

propose to show by this witness along the line he has been examined that on July 10, 1915, the city of Flint had approximately $3,700 in its possession belonging to the contractors Heystek & Vander Vliet, the principals in certain bonds furnished by the surety company to the city of Flint; that the correspondence had between the city of Flint, consisting of exhibits 1, 2, 3, and 4, was had and that the city of Flint received notice that we expected the city of Flint to hold those moneys for our protection because of the fact the city of Flint had notified us that one Hall and also one Darling were both making claims against the city and that the city was claiming that those liabilities, whatever they might amount to, were caused through the negligence of Heystek & Vander Vliet in the performance of their contract.

"*The Court:* Contract or contracts?

"*Mr. Fitzgerald:* I say they said contract in that case, but it was through negligence, through something they were responsible for and for which we were liable. We further offer to show that the Chicago Bonding & Surety Company had an assignment of all those moneys, and that the Chicago Bonding & Surety Company at that time had a right to come to the city of Flint and demand that that money be paid over to it, but that it refrained from doing so and was induced not to do so by reason of the promise of the city to hold the same until these damage suits were settled, and we offer exhibits 1, 2, 3 and 4 in evidence for the purpose of showing that fact.

"*The Court:* Now, Mr. Reporter, it is conceded in this case that the surety company were sureties on the contract or bond given by Heystek & Vander Vliet on a certain paving job on South Saginaw street, from Fifteenth street to Peer avenue.

"And it is also admitted and conceded that at the time that this notice was given,—the claimed notice was given to the city—that the contractors and the city had settled all matters pertaining to this particular contract.

"*Mr. Fitzgerald:* I think that is true, yes, sir. Mr. Farley says it is true and I suppose it is.

"*The Court:* On this question, there is no proof in the case that that man who wrote the letter that you

have offered in evidence had any authority from the engineer or from the city of Flint to—I haven't seen the letter, but I assume I know what they are—to write the letters or to bind the city by it; that the city can only be bound by an act of its common council, or by some one specifically delegated to act for it under given circumstances and conditions. Now, they claim there was an assignment made of all the moneys belonging to the city to these sureties. It is conceded if there were such an assignment, the city had no knowledge of it. Is that right?

"*Mr. Fitzgerald:* Yes, sir; I don't say that the city had any notice or any knowledge of our assignment, but I take the position it is not necessary that they should know, in view of the duty they owed to us as surety.

"*The Court:* That is a question of law. You haven't got to that yet. What were you going to say, Mr. Farley?

"*Mr. Farley:* I was going to say in addition to what the court has said, there is no evidence that the letter dated July 10, which is offered in evidence as exhibit 4, was ever called to the attention of any one outside of the witness Drury, the assistant city engineer at that time.

"*The Court:* Was he assistant or an employee?

"*Mr. Farley:* He was simply an employee, assistant city engineer, and under the evidence in the case there is no evidence that that letter was ever called to anybody's attention. So there is not even evidence that the city had notice of any such thing.

"*Mr. Fitzgerald:* I think I perhaps ought to supplement my offer by saying this, that we offer to show that the first letter that was written by the surety company and out of which this correspondence grew, and which exhibits 1, 2, 3 and 4 follow, that that was written to the city engineer of the city of Flint, and that these exhibits 1, 2, 3 and 4 followed after that and they show on their face they were a continuous, running correspondence.

"*The Court:* And that was, as I understand, after the matters between this contractor and the city on this particular pavement had all been settled and paid?

"*Mr. Fitzgerald:* You are right about that. It is

conceded, at least on the strength of Mr. Farley's statement, it is all paid up. And we want the record to further show that we offer to show that the surety company on the strength of this correspondence with the city relied upon the city to hold these moneys and did so until September, 1915, when it found out that the moneys had not been retained and that the claims of Hall and Darling had not been settled by the contractors.

"*The Court:* It is also conceded—you state that the surety company had an assignment of all the moneys belonging to these contractors?

"*Mr. Fitzgerald:* Yes.

"*The Court:* But that that knowledge was never communicated to the city?

"*Mr. Fitzgerald:* No, I don't claim that, but I claim —what I do claim about it is this, and what I offer to show, perhaps it is more a legal conclusion but I will put it in this way. In asking the city of Flint to withhold these moneys, we were acting in our rights and we were taking control of those moneys under our assignment under the promise of the city of Flint to hold them until the claims of Hall and Darling were settled, and we were relying upon that.

"*The Court:* That might be true if the city had made the promise.

"*Mr. Fitzgerald:* Well the notice to them that they should do so. I claim on both propositions. It constitutes notice.

"*Mr. Farley:* There is no notice to them.

"*The Court:* No, I think I shall have to sustain the objection.

"*Mr. Fitzgerald:* Well, that view of the court dispenses with any further evidence on the part of the defense. In other words, it goes to our whole defense."

Whereupon the court directed a verdict and judgment for the plaintiff for $1,737.30 and costs.

The defendant Chicago Bonding & Surety Company has brought the case here for review, and the following errors are assigned:

1. That the court erred in sustaining plaintiff's objections to the offer in evidence of exhibits 1, 2, 3, and 4.

2. That the court erred in refusing to permit the defendant to show that there was approximately $3,-700 in the possession of the city of Flint on July 7, 1915, belonging to the contractors Heystek and Vander Vliet.

3. That the court erred in refusing to permit the defendant Chicago Bonding & Surety Company to show that it had an assignment of all moneys due the contractors from the city of Flint.

4. Error in directing a verdict and judgment for the plaintiff.

Although the contract between the city and the contractors is not fully set forth in the record, it is the claim of appellant that it contained the following provision:

"All payments made to second parties (Heystek and Vander Vliet) for labor and material furnished under this contract, shall be in accordance with section 3 of chapter 23 of the charter of the city of Flint." (Act No. 346, Local Acts 1901.)

That section contains the following provision:

"The city engineer shall, from time to time, make estimates of the amounts earned and payable upon any contract for work done and material furnished, and report the same to the council, and thereupon it shall be the duty of the council to order payment from the proper funds sixty per cent. of the amount so reported."

Much time was spent in the examination of the witness Drury bearing upon the nature and extent of his authority. Under the charter there is no such officer as assistant engineer. Drury appeared to be an employee of the city. But if it were to be conceded that he possessed all of the authority of the city engineer, he had no authority under the charter to bind the city by the statement contained in the letter, viz.:

"The payments on the various contracts of Mr. Heystek are being withheld until all of the damage suits now pending in circuit court have been settled."

There was no evidence that the city or the council had any notice or knowledge of such statement, and the statement could not be held to bind the city to withhold moneys due, or to become due to contractors arising out of other separate matters or contracts.

Counsel for appellant cite *Dundas* v. *City of Lansing*, 75 Mich. 499, and quote the following language from the opinion:

"The individual knowledge of officers or agents or a municipal corporation, who in such capacity have powers or duties conferred upon them with reference to a given matter, is the knowledge of the corporation, and notice to such officers or agents, is notice to the corporation, and the corporation is bound or affected by such knowledge or notice."

That language was used with reference to notice of a defective cross-walk, given to the alderman of the ward, about six months before the accident. It has no application here where the letters to the city engineer and Drury were not notice of matters to any officers who had powers or duties conferred upon them with reference to the making of payments to the contractors—powers and duties resting upon the council only.

Under the charter, the city engineer was required to estimate the amount earned from time to time on public contracts, and report the same to the council, but the council was the sole body having authority to order payment of any sums on any such contracts. It was not shown, nor was any offer made to show, that the council was ever notified by the surety company in respect of any of the matters referred to in these letters, or that the council ever authorized the city engineer, or his assistant, to make any representations in respect of those matters, or that any representations made by either of them, were ever ratified or confirmed by the council.

While it was claimed at the trial that the surety company had an assignment of such funds, no offer was made to show, but on the contrary it was disclaimed, by appellant's counsel, that any notice of such assignment had ever been given to the city.

An examination of the record shows that in 1914 the contract for the South Saginaw street pavement was made, that the amounts earned thereunder were fully paid to the contractors, and that after that, and on December 24th, the city received notice of a damage claim of Sidney Hall. As appears from defendant's exhibits offered in evidence, other contracts were made and completed in 1915. We think it clear that no duty or obligation rested on the city in making or carrying out these subsequent contracts, to withhold any moneys from the contractors that might be earned thereafter, unless the city had actual notice of assignment from the contractors to the surety company. Suit was not begun on the claim of Hall until 1915, and the judgment of February 10, 1916, was affirmed in this court in 1917; so the liability of the city was not established, at the time the several amounts earned by the contractors became due and payable, and without notice of an assignment to the surety company, the city had no authority to withhold or retain any money due on such contracts after the completion thereof. We do not understand, from any authorities cited by appellant, that there was any obligation resting on the city to retain such money, arising out of other separate and distinct contracts, pending the establishment of a claim for negligence of the contractors.

We find no error in the record, and the judgment of the circuit court is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.