## Pleasants, et al. v. Blackberry, Kentucky and West Virginia Coal and Coke Company.

(Decided November 23, 1923.)

### Appeal from Pike Circuit Court.

1. Mines and Minerals—Evidence Held to Show Land Included in Lease by Mutual Mistake Known to Officers of Corporation when Lease was Assigned to it.—In action by assignee of a lease to obtain a reduction in minimum royalties and damages for loss of profits, because of failure of title in part of the land, evidence held to show that the land to which the title failed was included in the lease by mutual mistake of all parties thereto and that both the president and general manager of plaintiff corporation promoted and organized by the lessees for the purpose of developing the lease, knew of that fact when the lease was assigned to it for corporate stock.

2. Corporations—Corporation Assignee of Lease Held Chargeable with Knowledge of Mutual Mistake in Lease Known to Both President and General Manager.—Where land was included in mining lease by mutual mistake of all parties thereto and both the president and general manager of a corporation, promoted and organized by the lessees for the purpose of developing the lease, knew of that fact when the lease was assigned to it for corporate stock, the knowledge of the condition of the title on the part of the promoters was chargeable to the corporation, and it stood in precisely the same position as the original lessees.

3. Corporations—Not Chargeable with Knowledge of Officer or Agent Acquired while Acting for Himself.—Ordinarily a corporation is not chargeable with knowledge of an officer or agent acquired before he became such, or even thereafter, while acting for himself and not for the corporation, but a corporation is chargeable, if such knowl-

edge is present in the mind of the officer or agent when transacting the corporation's business to which the knowledge relates.

WILLIS STATON and ROSCOE VANOVER for appellants.

J. J. MOORE and GEO. S. WALLACE for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

In February, 1903, appellee became the owner of a coal lease on 1,400 acres of land executed to its assignors by appellants in March, 1902.   After mining coal from the land and paying the minimum royalties specified in the lease for thirteen years, appellee instituted this action in equity against the lessors, seeking "an equitable reduction in the minimum royalties" because, as alleged, the lessors had no title to 250 acres of the leased land.

A demurrer to the petition was filed but never acted upon, and defendants answered, admitting they never owned the 250 acres, and that the minimum royalty of $2,650.00 per year was based upon a warranty that the lease covered 1,400 acres, which they alleged it did contain outside of the 250-acre tract, and that the inclusion of that tract, known as the "Bright land," in the lease was by mutual mistake of the parties, and that plaintiff had knowledge of that fact when it acquired the lease.

The affirmative averments of the answer were traversed of record, and, after the taking of proof by deposition had been completed by both sides, an amended petition was filed by agreement and traversed of record, in which plaintiff sought $110,920.20 as damages for lost profits because of the failure of title to the Bright land.

No further proof was taken, and at the next term of court an order of submission was entered, but set aside upon motion of the defendants, who then filed an amended answer pleading limitations and estoppel, together with a motion to require plaintiff to elect which cause of action it would prosecute.   The amended answer was traversed of record, and the motion to elect was overruled, to which defendants excepted.

Upon the same day, and immediately following the above order, appears the judgment which recites that the cause was under submission, and awards plaintiff $13,-500.00 as damages for breach of warranty, to all of which defendants objected and excepted.

Complaint is made of the order overruling the motion to elect, that the submission was premature, and that defendants were wrongfully deprived of an opportunity to have the issue of damages tried by a jury, that the only damages shown were uncertain, speculative and remote, and that the court erred in denying the defenses of mistake, estoppel, and limitations.

Having reached the conclusion that the Bright land was included in the boundary described in the lease by mutual mistake of all the parties thereto, and that plaintiff acquired the lease with knowledge of that fact, it results that the court erred in not dismissing the petition for this reason alone, and we need not consider other errors assigned.

Defendants proved, not only by several of their own number but also by the deputy clerk who took their acknowledgments to the original lease, that it was discussed and understood by the parties at the time that they did not own the Bright land, and that it was not to be included in the lease. The land is described in the lease as "being all of the lands owned and claimed" by lessors "on and around Blackberry creek, and fronting on Tug river adjoining the lands leased" by lessees "from Samuel Followay and others, and consisting of three tracts of land" described in the deeds from Jo. Davis to Chloe A. Davis and from J. M. Davis to D. D. Pleasants and Walter Graham, and the mistake was due to a failure to recite in the lease, which was prepared by one of the lessees, the fact known by all parties that the Bright land had been sold by their ancestor after the execution of the deeds referred to and before they acquired title from him to the lands actually leased and intended to be described by the lease.

There is no contradiction of this evidence by any witness for the plaintiff, or at all.

It is further shown, also without contradiction, that the original lessess, five in number, promoted and organized the plaintiff corporation for the purpose of taking over and developing the lands leased by them from defendants, and, for corporate stock, conveyed the lease to the corporation; that two of their number, McGuffin and Walker, became president and general manager respectively of plaintiff corporation as soon as it was organized; that they and a Mr. Cooper were the lessees who secured the lease from defendants, and to whom, at the

time, it was explained defendants did not own the Bright land, and that same was not included in the lands they were leasing.

Walker testified for plaintiff, but he did not deny that he and his associates knew at the time that the Bright land was not owned by appellants and was not to be included; in fact, he testified that he did not know it was covered by the description referred to in the lease until six or eight months after its execution, when one of defendants informed him of that fact, which he later verified by surveying the land and examining the deeds referred to in the lease for a description of same.

It was clearly established, therefore, that the Bright land was included in the lease by mutual mistake of all parties thereto, and that both the president and general manager of the corporation promoted and organized by the lessees for the purpose of developing the lease, knew of that fact when the lease was assigned to it for corporate stock.

Under these circumstances, we think knowledge of the condition of the title is chargeable to the corporation, and, if this is true, upon the issue under consideration it stands in precisely the same position as the original lessees.   Snadon v. Salmon, 135 Ky. 47, 121 S. W. 970.

It was not clearly shown that the original lessees were the only stockholders in the corporation when formed, although we rather think that fact is inferable from what was proved, but, as we have seen, it was clearly established that they promoted and organized the corporation for the purpose of taking over and developing their lease; that two of their number became its president and general manager when it was organized; that they knew of the condition of the title when the lease was turned over to the corporation; and that it adopted the contract made by its promoters and accepted all of the benefits therefrom.

The rule we consider applicable here is thus stated in 14 C. J. 264:

"The mere fact that promoters of a corporation have notice or knowledge of a fact does not constitute notice to the corporation when formed, even though they may become stockholders therein, unless they are the only stockholders constituting the corporation or otherwise control it, or unless they also become such officers or agents

thereof that their knowledge is imputable to it under the rules governing notice to corporate officers and agents. But if a corporation adopts a contract made by its promotors and accepts the benefit thereof, it is chargeable with the promoters' notice of the rights of other parties under the contract."

In one of the numerous cases cited in support of the text, Huron Printing, etc., Co. v. Kittleson, 4 S. D. 520, 57 N. W. 233, knowledge of the principal promoter of the corporation, acquired as such, and who on its organization became its manager, was held to be the knowledge of the corporation.

So also in Hoffman Steam Coal Co. v. Cumberland Coal, etc. Co., 16 Md. 456, 77 Am. D. 311, knowledge of the principal promoter of a corporation, who became a director and largest stockholder therein, was imputed to the corporation to defeat its claim of being a *bona fide* purchaser without notice of circumstances impairing his title to land conveyed to it in payment for corporate stock.

Ordinarily a corporation is not chargeable with knowledge of an officer or agent, acquired before he became such, or even thereafter while acting for himself and not for the corporation. But this is a general rule to which there are many exceptions, and we have already stated as an independent rule what in fact is but an exception to this general rule. Another, if not the same exception to that rule, quite generally recognized, is that the company is chargeable with such knowledge if it were present in the mind of the officer or agent when transacting the company's business to which the knowledge relates. 14 A. C. J. 489. It is inconceivable that in the case at bar the president and general manager of the corporation they helped form to take over their lease did not have in mind their knowledge of their own title thereto when they assigned it to the corporation, and the case probably falls by right under the above exception to the general rule. But whether this be true or not, we are sure it properly falls under an exception rather than the general rule.

Wherefore the judgment is reversed, with directions to dismiss the petition.