STATE OF IOWA, Appellee, v. CHARLES P. KELLY, Appellant.

CRIMINAL LAW: Appeal and Error—Harmless Error—Improper Exhibit Withheld from Record.· The fact that the State, in identifying an accused, employs a photograph on the reverse side of which is printed the criminal record of the accused, furnishes no basis for an assignment of error when the photograph was never in the hands of any juror, and was not received in evidence, and when the criminal record was not referred to in the presence of the jurors. (See Book of Anno., Vol. 1, Sec. 13944, Anno. 81 *et seq.*)

Headnote 1: 16 C. J. p. 806.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 23, 1926.

The defendant was tried and convicted of the crime of entering a bank with intent to rob. From a judgment sentencing him to the penitentiary at Fort Madison for life, he appeals.—*Affirmed.*

*Charles P. Howard,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *Vernon R. Seeburger,* County Attorney, and *Loy Ladd,* Assistant County Attorney, for appellee.·

DE GRAFF, C. J.—The indictment charges, in substance, that Joe Wagner, Frank Vavario, Charles P. Kelly, and· Bruce Casady, on the 27th day of May, 1925,. in the county of Polk and state of Iowa, did willfully, unlawfully, and feloniously enter the premises of the Cottage Grove State Bank, a ·corporation duly organized and authorized to do a general banking business under the laws of the state of Iowa, with the unlawful and felonious intent then and there, on the part of the defendants

named, to hold up and rob the said Cottage Grove State Bank of the money, currency, and other things of value belonging to said bank. The indictment is based on Section 13002, Code of 1924.

The defendants were tried separately, and this appeal is a companion case to *State v. Wagner*, 202 Iowa ——, and *State v. Shaw*, 202 Iowa 632.

The primary proposition urged by the appellant Kelly has to do with the sufficiency of the evidence to sustain the verdict, and with certain rulings on objections to evidence. The jury was warranted in finding that the defendant Kelly, with Wagner, Vavario, and Casady, left Kansas City in a Marmon touring car, and arrived in Des Moines early on the morning of May 25, 1925. The car was placed in a garage, and these men went to the Cargill Hotel, near Seventh and Grand Avenue, where they registered under assumed names, and were assigned rooms. On that day and the following day they were seen about the city. The mechanics at the garage where the car was stored identified these men as the parties who had the car in the garage for repair. In the pocket of the car door at the left of the driver's seat, a revolver was discovered by one of the mechanics working on the car, which revolver was subsequently found in the car at the time of the arrest of Wagner and Vavario, near Avenue City, Missouri.

It further appears that, after the arrival of these men in Des Moines, they met Harry Shaw, a colored man, and it was arranged that Shaw should accompany them to the west end of the residential section of the city of Des Moines. There a Paige sedan was stolen, which was used the next day in consummating the robbery of the bank.

About 9 o'clock on May 27, 1925, the Kansas City men checked out of the Cargill hotel, taking with them a towel which had thereon the word "Cargill." After leaving the hotel, these men picked up Shaw, and procured the Paige car. The Marmon car was taken to the southwest corner of Twenty-fourth Street and Woodland Avenue, where it was parked, headed south on Twenty-fourth Street. Shaw was left in the custody of the Marmon. The other four then drove the Paige to Nineteenth and Cottage Grove Avenue, where Kelly, Vavario, and Casady left the car. Wagner remained in the car, and after Kelly and the other two had entered the bank, Wagner drove the Paige to

the front of the bank door, where he remained in waiting. Kelly and Vavario went to the tellers' windows, drew guns, and ordered the employees of the bank to lie on the floor. Casady went behind the counter, and proceeded to collect the money. At that time, Mrs. Miner, an employee of the bank, happened to be in the vault, and attempted to release a burglar alarm, which failed to respond. She then left the vault, and was immediately ordered to the floor. She then noticed another burglar alarm attached to a leg of a table. This alarm she managed to set off; whereupon the loot was collected, the men left the bank, got in the Paige sedan, and drove away. At this time they were observed not only by the employees of the bank, but by several pedestrians, who, upon the trial, identified Kelly, with his companions Vavario and Casady.

The Paige was driven west at a high rate of speed to Twenty-fourth Street, when it turned south to Woodland, where the Marmon car was stationed. The fruit of the robbery was then transferred to the Marmon car, and the Paige was abandoned. These four men, together with Shaw, then proceeded across Grand Avenue to the Eighteenth Street bridge, across the Raccoon River southwest to the cement plant, where Shaw left the car. The Marmon then went south toward the state line. A little later, the car was stopped, and the rain coats and straw hats which the men were wearing, the rubber bands from around the bills, and the money sacks, were burned.

Early in the afternoon, at Bethany, Missouri, the car was seen at a filling station by the mayor and constable of the town, who had received, by radio, a description of the bandits. These officers telephoned their observations to the police at St. Joe, and the authorities at that place sent officers north on the Jefferson Highway to Avenue City, where they waited to intercept the Marmon. When the car was seen approaching Avenue City, one of the officers stepped into the road, raised his hands, and tried to stop the car. The occupants of the car immediately opened fire, and the officers did likewise. The defendant Kelly at this time was riding in the front seat by the side of Wagner, the driver. During the exchange of bullets, Wagner was wounded. This caused him to lose control of the car; and although Kelly grasped the steering wheel, he was unable to negotiate a sharp turn in the road, and the car turned over,

pinning Wagner under the wheel. The other three fled the scene. Vavario was captured a short time thereafter in the immediate vicinity, and later Kelly and Casady were apprehended in Kansas City, and returned to Des Moines. The car, when wrecked, had the bags of money taken from the bank, and there was also found in the car the Cargill hotel towel.

There can be no question that the movements of these men were traced from their appearance in Des Moines until their arrest and return to Des Moines. The identification of these men was quite positive and satisfactory, and the defendant Kelly, from the time of his appearance in Des Moines to the time of his arrest, was identified by not less than eleven witnesses.

Identification is a question of fact for the jury to determine. In passing, it may be stated that no evidence was offered on behalf of the defendant.

One other brief point is argued, to the effect that the State, in its testimony in chief, questioned witnesses and exhibited to these witnesses photographs of the appellant. This was done by the State as an aid in the matter of defendant's identification. One of these photographs, Exhibit 8, contained on its reverse side the criminal record of the defendant. It is sufficient answer to this point that these exhibits were not admitted in evidence, nor were they handled by any juror. Furthermore, the jury was cautioned not to give any consideration to the exhibits. The photograph, Exhibit 8, was not examined by any juror, nor was the printed matter on the back thereof referred to or testified to by any witness. Clearly, there is no basis for error in this particular.

The judgment entered is—*Affirmed.*

STEVENS, FAVILLE, and VERMILION, JJ., concur.