State of Iowa, Appellee, v. H. R. Ayles, Appellant.

April 3, 1928.

*Harry B. Grund*, for appellant.

*John Fletcher*, Attorney-general, and *Carl J. Stephens*, Assistant Attorney-general, for appellee.

De Graff, J.—It must be conceded that the *corpus delicti*

is established beyond a reasonable doubt. The only controversy is whether the perpetrator of the crime and the appellant are the same person. This involves a question of identity, and, under conflicting evidence, this court will not disturb the finding of the jury. Identification is a question of fact. *State v. Kelly,* 202 Iowa 729. Upon the trial, the accuser said: "You are the man." The defendant said: "I am not the man."

The record facts disclose that one John S. Young was the owner and proprietor of a grocery store located at East Twenty-ninth Street, Des Moines, Iowa; that, in the early evening of the second day of November, 1926, Young checked his receipts for the day, and placed them in his pocket; that he left the store with a Mrs. Bauer; that he went to his garage, adjacent to the store, to get his car; that a man approached him, stating that he desired to get some meat; that Young went back with the man, opened his store, went to the ice box, procured the meat, and placed it on the scales, and, as he did so, two other men entered the store; that one of these men grabbed Young, and placed a gun against his head; that the defendant searched him, and that the money sack, containing about $190, was taken from Young's pocket; that the defendant also took six one-dollar bills from Young's pocket, and his watch, the watch being immediately returned to him; that these three men, all of whom had guns, then left the store, and drove away in an automobile; that Mrs. Bauer, after she left the store with Young, saw an automobile in front of Young's store, and observed that it was a Nash, carrying a Polk County license; that, a little later, through the identification of the automobile, certain persons in possession of a Nash car were arrested, and taken to the police station. It was at this time that Young was requested by the police department to visit the station, to see the parties in custody. Young complied with the request. It appears that he could not identify the first man placed under his observation. The second man brought in, named Bert Weathers, Young did identify as one of the men who participated in the robbery. The third man was identified by Young as the defendant, Ayles.

The record discloses that Young had ample opportunity, at the time of the robbery, to observe the features of two of the men who committed the crime. The store room was lighted

with a 150-watt light. Before Young was searched, the defendant, Ayles, reached up, pulled the lamp cord, and extinguished the light, which was about four feet from the meat scales. At this time, Young had a close-up view of the defendant, and upon the trial described how Ayles was dressed. Young also had a conversation with Ayles concerning the watch which had been taken from Young's pocket. Young noticed particularly the voice of the defendant, and testified that it was "a coarse, hoarse, bass voice," which Young later heard at the police station, when Ayles was talking to the police officer, after Ayles was brought into the room.

Young testified, with respect to the identification at the police station:

"I identified him immediately, as soon as I saw him. Q. Any question in your mind about him? A. No question at all. Q. Is this the gentleman [Ayles] right here? A. Yes, sir, that is the gentleman. I am positive."

The defendant, as a witness on his own behalf, denied that he was ever in Young's grocery store, but admitted that he knew Weathers, and that he (Weathers) had a 1920 Nash. He further testified that, on the day in question, he drove to Newton, Iowa, and was not in Des Moines on the evening of the robbery. His alibi was corroborated by certain witnesses, but it may be stated that his primary witnesses were impeached, in that their reputation for general moral character in Newton was bad.

We feel that further comment on the evidence in these particulars is unnecessary. It was for the jury to say which of the witnesses they would believe or disbelieve. *State v. Madden,* 170 Iowa 230, 242. The jury did disbelieve the story told by the defendant, and there was ample justification for so doing, under the record before us.

One further point is urged by the appellant, wherein it is urged that the trial court erred in admitting the testimony of Mrs. Bauer, to the effect that, when Mr. Young, the pro-prietor of the grocery store, first saw the defendant in the identification room of the police station, he said: "There is the man that pulled the light out." Mrs. Bauer was not an identification witness. She did see a Nash car in front of Mr. Young's grocery store, immediately prior to the robbery. She did not see the parties in

the car or in the grocery store. She did accompany Mr. Young to the municipal court building in Des Moines, at the time he was called to identify, if possible, the men in custody. She testified:

"I was with Mr. Young in the room where they [officers] brought the men in. We were behind a curtain, looking through a hole. Q. Well, what happened when Mr. Ayles came in? A. Mr. Young said: 'There is the man that pulled the light out.'"

Counsel for defendant moved to strike the answer, as incompetent, irrelevant, and immaterial, it not having yet been shown that anything that was done or said was done there in the presence of the defendant. The court:

"Was that in reply to any question asked him? Did anybody say anything to Young when that was said? A. Nothing that I know of."

Counsel for defendant then made further objection:

"I still want to object to that form of question as incompetent, irrelevant, and immaterial, and not a part of the *res gestae.*"

The trial court thereupon overruled the objection, saying:

"If it is *res gestae,* it is competent. I think it is."

It is apparent that the trial court admitted the testimony on the theory that the declaration was a "spontaneous exclamation," within the exception to the hearsay rule, and therefore *res gestae.* No definition, perhaps, can be found which is so comprehensive as to embrace within its limits all cases involving *res gestae;* and in determining questions concerning *res gestae,* it is impossible to undertake to test them by a definition or rule. Courts assume, and rightly so, some latitude in this matter; and the term "spontaneous exclamation" as a name for this exception to the hearsay rule has been employed, as the eminent Wigmore has said, "in default of a better one." 3 Wigmore on Evidence (2d Ed.), Section 1745. The term has been judicially used in *Lander v. People,* 104 Ill. 248, 256; *Mitchum v. State,* 11 Ga. 615, 621; *Dismukes v. State,* 83 Ala. 287, 289.

A study of decisions discloses that some courts are more liberal than others in the interpretation of the limitations on the doctrine of *res gestae.* An example of this fact is found in *Lander v. People,* supra. We do not approve the ruling or the reasoning in the *Lander* case in determining the question of *res*

*gestae.* In passing, it may be said that mere spontaneity of expression or extempore utterances of the mind do not *per se* determine *res gestae.*

In the instant case, we do not approve the reasoning or the ruling of the trial court on the objection to the question giving rise to the assigned error. However, the ruling was clearly without prejudice to the defendant. It cannot be questioned, under the law of evidence, that it is competent for a witness who saw the accused at the time of the commission of a crime, and again after its commission, to testify to that fact, even though identification evidence is opinion evidence. Prior to the offer of the challenged testimony of Mrs. Bauer, the jury knew, by competent evidence, that, in the opinion of Mr. Young, the defendant was *the man*, and the man that *"pulled the light out."* The declaration of the identifying witness (Mr. Young) at the police station, as testified to by Mrs. Bauer, added nothing in the way either of limitation or enlightenment. The factual setting in the case at bar obviously makes the ruling of the court, in any event, nonprejudicial.

We perceive no substantial error in the record, and the judgment entered is—*Affirmed.*

STEVENS, C. J., and EVANS, MORLING, KINDIG, and WAGNER, JJ., concur.